O/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHYLLIS M. PECK,

          Plaintiff,

-against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-3762 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Phyllis Peck ("Claimant") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration's ("SSA") determination that she is not entitled to disability insurance benefits. Both parties move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Entry ## 20, 21.) For the reasons set forth below, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED in part and DENIED in part, and the case is REMANDED for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Procedural History

Claimant filed an application for disability insurance benefits on April 4, 1997. (Tr. 121-24.) She alleged that she had been disabled since February 4, 1995, as a result of a cervical radiculopathy, muscular sprain of the anterior chest wall, and a possible rotator cuff tear. (Tr. 121-24.) The SSA denied Claimant's application. (Tr. 93, 94, 95-98, 100-01.) Claimant requested a hearing, but an Adjudication Officer ("AO") reversed the original decision and

1

granted her benefits without one. (Tr. 103-11.) The Appeals Council, however, upon its own motion, vacated the AO's decision and remanded for further proceedings, finding that the AO had given undue weight to the opinion of Dr. Dwiref Mehta, one of Claimant's treating physicians. (Tr. 115-19, 112-14.)

ALJ Michael London held an administrative hearing on September 25, 1998, at which Claimant appeared with her attorney. (Tr. 27-92.) On November 19, 1999, ALJ London denied her application, finding that she was not disabled. (Tr. 11-25.) On February 21, 2003, the Appeals Council denied Claimant's request for further review. (Tr. 5-8.) Claimant filed an appeal in the Eastern District of New York. Peck v. Barnhart, 03-CV-2033 (SJ). While that case was pending before Judge Sterling Johnson, the parties stipulated to remand the case for further proceedings. (Tr. 389-90.)

Before any further proceedings took place, the Appeals Council granted Claimant benefits dating from February 1, 2000 based on a second disability application. This decision limited the contested time period to February 4, 1995 through January 31, 2000. (Tr. 387, 391-94.) On April 13, 2006, ALJ London found that Claimant was not disabled during the period at issue. (Tr. 372-86.) Claimant's current action challenges that determination.

### B. Facts and Medical History

Claimant testified that on February 4, 1995, while working as a home attendant, she slipped in a bathtub and injured her left shoulder. (Tr. 36, 159.) She also fractured both her wrists in a different fall on December 1, 1995. (Tr. 36.)

Due to these injuries, and alleged impairments in her left shoulder, back, neck, wrists, chest, and abdomen, Claimant has been on an odyssey of medical visits. (See Compl. (Docket Entry # 1).) She has been seen by no fewer than five specialists. She has also seen consultative

2

examiners for an insurance company. Other physicians did not examine her, but reviewed her medical records. These visits and the doctors' conclusions are briefly recounted below.

1. Medical Evidence from 1995

Soon after her initial injury, Claimant experienced pain in her lower back and difficulty holding heavy objects. (Tr. 130.) She visited Dr. Dwiref Mehta twice in February of 1995. He diagnosed a cervical radiculopathy and a sprain of the left shoulder. (Tr. 321-22.) He also noted in his file "[rule out] rot[ator] cuff injury." (Id.) Dr. Mehta found that Claimant was "totally disabled" from February 4, 1995 through February 21, 1995. (Id.)

As a result of an insurance claim she filed, Claimant also saw Dr. William Kulak, an orthopedist and consultative physician for the workers compensation insurance company. (See Tr. 41.) He examined Claimant on May 17, 1995, August 9, 1995, and September 27, 1995. (Tr. 266, 272, 277.) Dr. Kulak prepared medical evaluation reports in which he stated that Claimant's cervical spine had a full range of motion. (Tr. 268.) Unlike Dr. Mehta, Dr. Kulak did not mention a radiculopathy. Dr. Kulak opined that Claimant had a mild, temporary, and partial disability, but found that it was due to a biceps tendonitis of the left shoulder, a resolving, left-sided pectoralis myositis, and early-stage carpal tunnel syndrome. (Tr. 269, 275.) Dr. Kulak found that all of Claimant's "subjective symptoms" were related to the biceps tendonitis and to early-stage carpal tunnel syndrome. (Tr. 275.) He expected the tendonitis to resolve with time and medication. (Id.) Dr. Kulak concluded that Claimant could return, unrestricted, to her job in six weeks. (Tr. 271.) He opined that Claimant could do light work, but no heavy lifting as of September 27, 1995. (Tr. 280.)

Because of the injury to her left shoulder, Claimant began treatment with Dr. Stratford, an orthopedist. (Tr. 183.) He saw Claimant four times in the fall of 1995. (Tr. 185.) Dr.

3

Stratford diagnosed a post-traumatic synovitis of the left shoulder. (Tr. 183.) Dr. Stratford found that Claimant had a mild to moderate partial disability and was unable to perform heavy lifting. (Tr. 185.) By November 7, 1995, Claimant reported to Dr. Stratford that she was fifty percent better, but Dr. Stratford's "clinical determination" was that Claimant had improved beyond fifty percent and that Claimant was doing "quite well with therapy." (Tr. 185.)

On December 19, 1995, Dr. Stratford reported that Claimant's shoulder motion was still limited, but had improved. (Tr. 185.) He noted that Claimant's right wrist, which was healing in a cast, would require surgical repair. (Tr. 186, 188.)

2. Medical Evidence from 1996

In connection with her insurance claim, Dr. Kulak re-examined Claimant on January 10, 1996. (Tr. 281.) He stated that Claimant's cervical spine had improved but that her overall condition was largely unchanged. (Tr. 284.) He opined that Claimant was capable of only light work from table-top level to the level of her shoulder, but said this restriction was temporary, as a "biceps tendonitis is usually limited in regard to its duration." (Tr. 284.)

Claimant next saw Dr. Kulak on June 12, 1996. This time his diagnoses were a biceps tendinitis and subacromial bursitis of the left shoulder. (Tr. 289.) He maintained that Claimant had a mild, partial disability. (Tr. 290.) In an addendum dated the same day, Dr. Kulak opined that Claimant was not yet able to return to her full work duty. (Tr. 291, 298.) He also said that Claimant was able to "return to work light duty" but could not perform excessive over-the-shoulder work, or lifting and carrying of more than ten pounds. (Tr. 291.) Dr. Kulak saw Claimant again on August 28, 1996. His report indicated that Claimant's condition was relatively unchanged. (Tr. 291-94.)

4

3. Medical Evidence from 1997

On April 18, 1997, Claimant again visited Dr. Mehta, complaining of pain in the neck, pain in the left shoulder, and pain in the lower back. (Tr. 189.) Dr. Mehta diagnosed a cervical radiculopathy, a rotator cuff injury of the left shoulder, and a lumbar myofascitis. (Tr. 189.) Dr. Mehta opined that Claimant could lift and carry up to fifteen pounds, stand or walk up to two hours a day, and sit for less than six hours a day. (Tr. 192.)

Dr. Mario Mancheno is a consultative examiner who saw Claimant on May 15, 1997. (Tr. 197-200.) He reported that Claimant had no difficulty raising from a chair, dressing, undressing, getting on the examining table, or lying down. (Tr. 197.) Dr. Mancheno's impression was that Claimant's examination was consistent with discogenic disorder of the lumbar spine, and injury of the left shoulder and wrist. (Tr. 199.) He opined that Claimant had a moderate limitation in lifting, carrying, pushing, and pulling, but no impairment in standing, walking, or sitting. (Tr. 199.) An x-ray revealed disc space narrowing at L5-S, fishmouthing, and osteoporosis. (Tr. 200.) The x-ray also revealed "three degrees list, concave right, involves proximal five vertebral bodies." (Id.) The x-ray further indicated a transitional fifth vertebral body and sclerotic changes at the L2 level, left side. (Id.) No fracture or dislocation was apparent. (Id.)

Two state agency physicians reviewed the record in the summer of 1997. On July 15, 1997, Dr. J.B. Jasmin opined that Claimant could lift or carry up to twenty pounds occasionally and ten pounds frequently, stand or walk for six hours a day, and sit for six hours a day. (Tr. 202.) On September 2, 1997, Dr. E.P. Giardino concurred. (Tr. 208.)

5

4. <u>Medical Evidence from 1998</u>

Dr. Enrique Monsanto, a hand and shoulder surgeon, examined and treated Claimant in connection with a possible rotator cuff tear. (Tr. 218.) On April 22, 1998, Claimant reported to Dr. Monsanto that she was in excellent health. (Id.) Dr. Monsanto noted no atrophy of Claimant's left shoulder. (Tr. 218.) Dr. Monsanto reviewed the MRI, which was consistent with a rotator cuff tear and opined that Claimant's shoulder should be repaired. (Tr. 218.)

On August 26, 1998, Dr. Monsanto performed surgery to repair a rotator cuff tear with impingement syndrome in Claimant's left shoulder. (Tr. 313-15.) He permitted Claimant to do "activity as tolerated." (Tr. 316.)

## II. DISCUSSION

Claimant asserts that ALJ London erred in several ways. Specifically, she argues that (1) he did not properly perform the required credibility analysis; (2) he did not properly apply the treating physician rule; (3) he failed to adequately develop the record; (4) his RFC evaluation is not supported by substantial evidence; (5) he did not obtain statements of professional qualifications from the doctors; (6) he failed to properly inquire about discrepancies between the Dictionary of Occupational Titles ("DOT") and the Vocational Expert's ("VE") testimony. (Pl.'s Br. (Docket Entry # 20) 15-17.)

The court finds that ALJ London improperly assessed Claimant's subjective complaints of pain, and therefore remands this case for a new evaluation of those allegations. Because the ALJ erred in assessing Claimant's credibility, this court cannot meaningfully review ALJ London's RFC determination, and therefore does not reach the question of whether the RFC determination was supported by substantial evidence. See Meadors v. Astrue, 2010 WL 1048824, at *5 (2d Cir. Mar. 23, 2010) (concluding that an ALJ's error in assessing a claimant's

credibility "depriv[ed the court of] the ability to subject his RFC determination to meaningful review"). The court finds the remainder of Claimant's claims largely without merit, but directs the ALJ to address certain minor deficiencies, as discussed below.

A.  **Subjective Complaints of Pain**

Claimant asserts that ALJ London did not properly consider her subjective complaints of pain. (Pl.'s Br. 17.) Pain is an important element of the disability determination and must be thoroughly considered in calculating a claimant's RFC. Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984). The regulations establish a two-step inquiry for evaluating a claimant's subjective complaints of pain: the first step concerns the source of the pain, while the second step concerns the extent of the pain. See SSR 96-7P; 20 C.F.R. § 404.1529(c). First, the ALJ must decide "whether the claimant suffers from a medically determinable impairment[ ] that could reasonably be expected to produce the pain alleged." 20 C.F.R. § 404.1529(c). Second, the ALJ must "evaluate the intensity and persistence of those symptoms considering all of the available evidence." Id. To the extent that the claimant's "pain contentions are not substantiated by the objective medical evidence," the ALJ must evaluate the claimant's credibility. Id. Remand is appropriate where an ALJ does not follow these steps. Id.

ALJ London never fully performed the first step of the test described above. He rejected the diagnoses of a cervical radiculopathy, severe lumbar radiculopathy, facet syndrome, and abnormalities of the lumbosacral spine and lower extremities as inconsistent with the record as a whole, without ever determining whether such impairments were "medically determinable impairment[s] that could reasonably be expected to produce the pain alleged." SSR 96-7P; 20 C.F.R. § 404.1529(c); (Tr. 379.) Moreover, ALJ London inadequately addressed evidence of medically determinable impairments, including (1) the impingement syndrome; (2) Dr.

7

Stratford's diagnosis of a post traumatic synovitis of the left shoulder; (3) x-rays exhibiting a disc space narrowing at L5-S1, fishmouthing, osteoporosis, and scelerotic changes; (4) Dr. Kulak's diagnosis of a subacromial bursitis of the left shoulder, temporary biceps tendinitis, and a resolving pectoralis mayositis; (5) the left shoulder injury; (6) the rotator cuff tear and its accompanying surgery; (7) carpal tunnel syndrome; and (8) the bilateral wrist fractures and their accompanying surgery. ALJ London made no inquiry into whether or not these are "medically determinable impairment[s] that could reasonably be expected to produce the pain alleged."

Although the second step appears to call for a single assessment, it involves two separate determinations in some cases: (1) the amount of pain substantiated by the medical evidence, and (2) the claimant's credibility as to any additional complaints of pain. If the claimant's medically determinable impairments could reasonably be expected to produce some of the pain alleged, such pain must be credited to the claimant. If the claimant alleges more pain than is substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility. See Taylor v. Barnhart, 83 Fed. Appx. 347, 350 (2d Cir. 2003): SSR 96-7P; 20 C.F.R. § 404.1529(c). If an ALJ omits the first determination, he may inappropriately discount all pain based on his assessment of claimant's credibility, including the pain substantiated by objective medical evidence that is entitled to automatic credit.

In this case, ALJ London erred at step two because he engaged in a credibility determination without ever discussing the amount of pain that was "consistent with the objective medical evidence[.]" ALJ London rejected Claimant's complaints of pain because he found her not to be credible. In doing so, ALJ London may have improperly discounted pain that was "substantiated" by objective medical evidence, especially in light of his incomplete analysis at step one.

8

Therefore this court must remand for a redetermination of Claimant's RFC. The evidence in the record indicates that Claimant suffers from a number of ailments. On remand, the ALJ should first identify all possible sources of pain. He should then determine whether each of those sources is a medically determinable impairment that could reasonably be expected to produce the pain Claimant describes. Any pain that is "substantiated" by objective medical evidence should be included in Claimant's RFC determination. To the extent that Claimant's allegations of pain exceed what might reasonably flow from her medical conditions, the ALJ should consider Claimant's credibility by applying the factors set forth in the regulations. See Meadors, 2010 WL 1048824 at *3, 4; Taylor, 83 Fed. Appx. at 350.

### B. Treating Physician Rule

Claimant contends that ALJ London failed to properly apply the "treating physician rule". (Pl.'s Br. 6, 9, 11.) Specifically, Claimant asserts: (1) Dr. Mehta's opinion was entitled to controlling weight, and (2) even if it were not entitled to controlling weight, the ALJ did not properly determine the weight it deserved. See id. For the reasons discussed below, this argument is without merit.

#### 1. The Basic Rule

Under the treating physician rule, an ALJ evaluating the nature and severity of a social security claimant's impairment must afford special significance to opinions of a treating physician. See 20 C.F.R. § 404.1527(d)(2). Such opinions are entitled to "controlling weight" provided they are (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).

9

Even where an ALJ determines that a treating physician's opinion is not entitled to "controlling weight," he may not disregard it entirely, but must engage in a reasoned determination of the weight the opinion merits. 20 C.F.R. § 404.1527(d)(2). This determination involves five factors: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Commissioner that tend to support or contradict the opinion. SSR 96-5p; 20 C.F.R. § 404.1527.

An ALJ's failure to specifically discuss the enumerated factors does not require remand, so long as the ALJ correctly applied the "substance of the treating physician rule" such that the claimant "received the rule's procedural advantages." See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). Remand is appropriate, however, if the ALJ's opinion does not assert "good reasons" for the weight given to a treating source's opinion. Halloran, 362 F.3d at 32. Because "the requirement of reason-giving exists, in part, to let Claimants understand the disposition of their cases, even – and perhaps especially – when those dispositions are unfavorable," an ALJ's opinion must enable the claimant to understand why his or her treating physician's opinion was not followed. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

2. ALJ London Did Not Err by Refusing to Give Dr. Mehta's Opinion Controlling Weight

Dr. Mehta, the Claimant's treating physician, opined that Claimant was limited to carrying ten to fifteen pounds, standing or walking for two hours a day, and sitting less than six hours a day. (Tr. 192.) ALJ London did not give "controlling weight" to that opinion because he found it to be inconsistent with substantial evidence in the record.

ALJ London cited a number of inconsistencies between Dr. Mehta's diagnosis and Claimant's symptomatology, the absence of any other physician who agreed with Dr. Mehta, and substantial contradictory reports from examining, consulting, and reviewing physicians. (Tr. 381-82.) Furthermore, the ALJ found that "imaging tests, as well as examination findings and clinical signs reported by all treating and examining sources" support the contradicting opinions. (Tr. 20, 381.) Although Dr. Mehta diagnosed a cervical radiculopathy, there was no MRI or other medically acceptable clinical or laboratory diagnostic technique that verified the diagnosis. (Tr. 379.) Furthermore, examinations performed by the insurance agency physician documented no cervical spine related symptoms, a full range of motion for the cervical spine, and a negative axial compression test. (Id.) Finally, the consultative physician found no significant cervical abnormalities in May of 1997 and Dr. Kulak noted that the Claimant "makes no complaints of any cervical spine-related symptoms and no radiation to the hand." (Id.)

ALJ London also identified a lack of support within Dr. Mehta's own work. (Tr. 381.) Dr. Mehta did not note symptoms that would normally accompany a cervical radiculopathy, including abnormalities of gait or station and motor or neurological deficits. (Id.) Additionally, there was no evidence that Claimant complained of or was treated for significant back pain until 2004. (Id.) Finally, Dr. Mehta's April 1997 report did not note any upper extremity limitation. (Id.) ALJ London found that there is "simply no medical basis for concluding that [Claimant] was not capable of standing, walking or sitting at least 6 hours in an 8-hour day." (Tr. 381.)

Given the substantial evidence inconsistent with Dr. Mehta's opinion, ALJ London properly determined that Dr. Mehta's opinion was not entitled to "controlling weight." Burgess, 537 F.3d at 128.

3. <u>The ALJ's Determination of the Weight Dr. Mehta's Opinion Merited Did Not Violate the Treating Physician Rule</u>

In giving Dr. Mehta's opinion less than controlling weight, ALJ London did not explicitly utilize the multifactor test set forth in 20 C.F.R. § 404.1527. Nevertheless, the ALJ made a reasoned determination that touched on three of the five factors in the test. ALJ London's finding of inconsistency dovetails with the second and third factors, while the imaging tests supporting the opinion of all examining and treating physicians falls within the fifth factor.

Two of the five factors were not specifically addressed: (1) the length, nature and extent of the treatment relationship; and (2) whether the treating physician was a specialist. Although both factors might have weighed slightly in Claimant's favor, their explicit consideration probably would not have altered ALJ London's conclusion. Although Claimant had been seeing Dr. Mehta for a substantial amount of time, she received contradictory diagnoses from Dr. Kulak, who she saw a number of times as well. Moreover, although Dr. Mehta is a specialist, so are other doctors in the record who gave contradictory reports. (See, e.g., Tr. 271, 218, 220.)

Overall, the reasons provided by ALJ London for disregarding Dr. Mehta's opinion qualify as "good reasons" sufficient to "let [the] Claimant understand" why he assigned little weight to Dr. Mehta's opinion. Id. Nevertheless, on remand, the ALJ should expressly weigh Dr. Mehta's opinion based on the five factors in SSR 96-5p and 20 C.F.R. § 404.1527.

C. **Duty to Develop the Record**

Claimant asserts that ALJ London did not adequately develop the record. (Pl.'s Br. 9, 14.) Specifically, she claims that ALJ London: (1) wrongly dismissed Dr. Mehta's disability determination because it was made within the workers compensation framework instead of attempting to discover its meaning; and (2) did not fulfill his duty to clarify vague statements

made by consulting, examining and treating physicians with regard to Claimant's residual capacity. (Id.)

Where the record evidence is inadequate to determine whether an individual is disabled, the ALJ must re-contact the claimant's medical sources to "seek additional evidence or clarification." 20 C.F.R. § 404.1512(e). Such a situation is presented where a physician's opinion is "so vague as to render it useless in evaluating" the claimant's status. See Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000). On the other hand, where there are no gaps and deficiencies in the record that prevent the ALJ from making the disability determination and assessing the claimant's RFC, the ALJ has met his obligation to develop the record. Carvey v. Astrue, 09-CV-4438, 2010 WL 2264932, at *2 (2d Cir. Jun. 07, 2010).

In this case, the record was "adequate to permit the ALJ to make a disability determination." Carvey, 2010 WL 2264932, at *2. ALJ London determined that Claimant retained the RFC to sit, stand, or walk up to six hours in an eight hour day. (Tr. 192.) Her right hand could lift or carry up to ten pounds frequently and twenty pounds occasionally, but her left hand was limited to lifting ten pounds and only below shoulder level. (Id.) As set forth below, each element of the RFC was supported by medical evidence within the record, and none of these supporting opinions were "so vague as to render [it] useless in evaluating" Claimant's status. Curry, 209 F.3d at 123.

ALJ London determined that Claimant could sit, stand, or walk for six hours. The record was adequate to permit the ALJ to make this determination. Doctors Jasmin and Giardino both opined that Claimant could sit, stand, or walk for six hours, Dr. Mancheno expressly stated that Claimant had no impairment in sitting, standing or walking, and neither Dr. Kulak nor Dr. Stratford mentioned any limitation in sitting, standing or walking. (Tr. 199, 202, 208.) Even Dr.

13

Mehta determined that Claimant could sit "for less than six hours a day," which is quite close to the ALJ's final determination that she could sit for "six hours." (Tr. 192, 382.) Regarding standing and walking, Dr. Mancheno noted that Claimant had no difficulty raising from a chair, getting on the examination table, walking toe-heel or in tandem, and that her gait was steady. (Tr. 197.) In short, the record contains a significant amount of evidence indicating that Claimant retained the ability to sit, stand or walk for a complete six hours.

ALJ London determined Claimant's right hand could lift or carry up to ten pounds frequently and twenty pounds occasionally, but that her left hand was limited to lifting ten pounds, and only below shoulder level. Here too, the record was adequate to permit the ALJ to make this determination. Dr. Kulak opined that Claimant had a limited lifting and carrying ability of no more than ten pounds, due to a _temporary_ condition. (Tr. 284.) Indeed, a year later, Dr. Jasmin and Dr. Giardino both opined Claimant could lift or carry up to twenty pounds occasionally and ten pounds frequently. (Tr. 202, 208.) Additionally, ten months after Dr. Kulak's opinion, the patient's own treating physician assessed her as able to lift up to fifteen pounds. (Tr. 192.) Finally, Dr Kulak opined that Claimant could perform work only to the level of her shoulder. The difference between Dr. Mehta's opinion and the ALJ's final determination, which Claimant contests, was a mere five pounds in a single hand.

ALJ London did not discuss Claimant's ability to push or pull. It appears that ALJ London determined that Claimant had no limitations on these abilities because he did not give the vocational expert any information regarding a pushing or pulling limitation. There is adequate evidence in the record that would have permitted the ALJ to make this determination. Dr. Kulak did not mention any pushing or pulling limitation, and Dr. Jasmin and Dr. Giardino both explicitly stated that there was _no_ pushing or pulling limitation. Furthermore, Dr. Jasmin

14

and Dr. Giardino's reports are not conclusory, but supported by evidence: Claimant's normal gait, station, and muscle power. (Tr. 202.)

ALJ London's analysis references additional evidence relevant to a lumbosacral spine condition and, by extension, to a limitation in pushing or pulling. Although on April 1997, the treating physician's report reflected moderate reduction in lumbar spine motion, it indicated no other abnormalities of the lumbosacral spine or the Claimant's lower extremities, and a consultative examiner who saw her one month later found no significant deficits involving the lower extremities. (Tr. 379.) Dr. Mancheno also observed the Claimant to have a steady gait with good coordination, rhythm and posture, and no difficulty walking or getting on and off the examining table. (Id.) Additionally, the record, during the period at issue, is devoid of findings typically associated with a functionally limiting spinal disorder: paravertebral muscle spasm, and sensory or motor loss due to muscle weakness or atrophy. (Id.) Furthermore, the record is devoid of diagnostic test evidence of a medically determinable spinal disorder. (Id.) In fact, there is no evidence that the Claimant complained of or was actively treated for significant back pain before May 2004. (Tr. 381.)

Accordingly, with respect to each element of the RFC determination, adequate evidence existed in the record to permit ALJ London to make the determination he did. The record was not "so vague as to render it useless in evaluating" Claimant's status. Curry, 209 F.3d 117, 123; Carvey, 2010 WL 2264932, at *2.

### D.     Function-by-Function Analysis

Claimant asserts that ALJ London did not perform the required function-by-function analysis of her work related abilities. (Pl.'s Br. 15.) Claimant is partially correct. Although ALJ London provided a function-by-function analysis as to five of the seven exertional abilities, he

15

failed to analyze Claimant's ability to push and pull. On remand, the ALJ should provide an explicit analysis of Claimant's pushing and pulling ability, as required by the regulations. See SSR 96-8p.

### E. Medical Qualifications

Claimant asserts that "[t]he administrative law judge was not permitted to receive, consider and weigh the medical reports of consultative and other medical evaluators, without first obtaining statements of their professional qualification[s]." (Pl.'s Br. 12.) Claimant's counsel, representing a different claimant, has unsuccessfully advanced this argument before. See Diaz v. Astrue, No. 08-CV-5006 (JG), 2009 WL 2601316, at *4 n.7 (E.D.N.Y. Aug. 24, 2009).

The Manual on the Social Security Administration Hearings, Appeals, and Litigation Law ("HALLEX"), section I-2-1-30, states that qualifications should be entered into the record when an ALJ admits a medical report or judgment by a health care professional. Id. This directive is neither onerous nor absolute; Hallex states that "a health care professional's qualifications are adequately documented when stationery letterhead or other document identifies his or her medical degree, specialty and Board certification." Id. While the Second Circuit has not reached the issue, other circuits have held that "HALLEX has no legal force and is not binding." Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003) (internal quotation marks omitted). Additionally, "other documents" in the record identify the medical degree, specialty, and board certification of several doctors. (Tr. 183, 276, 218) Finally, Claimant does not contend that the doctors in the record are not, in fact, medical doctors. "Under these circumstances, the failure to admit a statement of qualifications does not itself render the ALJ's

16

reliance on these reports erroneous." Diaz, 2009 WL 2601316 at *4 n.7; see Bunnell v. Barnhart, 336 F.3d at 1115.

F.  **Conflicts in Vocational Expert Testimony**

Claimant asserts that ALJ London erred in that he failed to inquire on the record whether there were any conflicts between occupational evidence the vocational expert provided and information contained in the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). (Pl.'s Br. 18.)

The regulations require such an inquiry only when there is reason to suspect a conflict. The strongest support in the regulations for Claimant's position is the statement that "the adjudicator has an affirmative responsibility to ask about any possible conflict between [vocational expert] evidence and information provided in the DOT." SSR 00-4p (emphasis added). Read in context however, it is clear that the Regulations do not require an ALJ to ask a rote question when there is no indication a conflict exists. See Salmini v. Comm'r of Soc. Sec., No. 09-CV-3642, 2010 WL 1170133 at *4 (2d Cir. Mar. 25, 2010) (affirming where ALJ did not inquire, but the court "saw no conflict"). Claimant's argument that an ALJ has to inquire regardless of whether a conflict exists is without merit.

III. **CONCLUSION**

Because the ALJ did not properly apply the regulations in assessing Claimant's subjective complaints of pain, the case is remanded. On remand, the ALJ should properly assess the extent and credibility of Claimant's allegations of pain. He should then re-determine Claimant's RFC. The ALJ should also make sure to: (1) expressly weigh Dr. Mehta's opinion utilizing the five factors enumerated in 20 C.F.R. § 404.1527, and (2) perform a function-by-

function analysis pursuant to SSR 96-8p. Accordingly, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED in part and DENIED in part, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

SO ORDERED.                                              s/Nicholas G. Garaufis

Dated: Brooklyn, New York                                NICHOLAS G. GARAUFIS
      August 4, 2010                             United States District Judge